JOHNNY RAY PHILLIPS,

        Plaintiff,

    v.

GASTON COUNTY, a county within the
State of North Carolina, JAN WINTERS, in
his official capacity as County Manager for
Gaston County, the GASTON COUNTY
POLICE DEPARTMENT, and WILLIAM J.
FARLEY, both in his Individual Capacity
and in his Official Capacity as Chief of Police
for the Gaston County Police Department,

        Defendants.

<u>MEMORANDUM AND ORDER</u>

**THIS MATTER** is before the Court on the following motions, responses, and replies:

1. "Defendants' Motion for Summary Judgment" (document #29), ". . . Memorandum of
Law in Support . . ." (document #30), and supporting exhibits and affidavit (document #31) filed
November 7, 2006;

2. "Plaintiff's Memorandum of Law in Opposition . . ." (document #46), and supporting
exhibits and affidavits (document ##47-49) filed December 28, 2006;

3. Plaintiff's "Affidavit of William M. Tyson, Ph. D." (document #45) filed December 29,
2006;

4. Plaintiff's "Motion to Strike Expert Report and Testimony of Ronald E. Hansen"
(document #37), and ". . . Memorandum of Law in Support . . ." (document #38) filed December 27,
2006;

5.  Plaintiff's "Motion to Strike Hearsay Statements of J. F. Holloway" (document #39), ". . . Motion to Strike Hearsay Statements of Sharon Ewing" (document #40), and ". . . Memorandum of Law in Support . . ." (document #41) filed December 27, 2006;

6.  Plaintiff's "Motion to Strike Portions of Affidavit of Interim Assistant County Manager Phil Ponder" (document #42), and "Memorandum of Law in Support . . ." (document #43) filed December 27, 2006;

7.  "Defendants' Memorandum of Law in Response to Plaintiff's Opposition to Summary Judgment" (document #54) filed February 21, 2007;

8.  "Defendants' Response . . . to Plaintiff's Motion to Strike Portions of the Affidavit of Phil Ponder" (document #55) filed March 9, 2007;

9.  "Defendants' Response . . . to Plaintiff's Motion to Strike Expert Report and Testimony of Ronald E. Hansen" (document #56) filed March 9, 2007; and

10.  "Defendants' Response . . . to Plaintiff's Motion to Strike Statements of Sharon Ewing and J. F. Halloway" (document #57) filed March 9, 2007.

The Plaintiff has not filed a Reply to the Defendants' Responses to the Motions to Strike, and the time for doing so has expired.

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Plaintiff's four Motions to Strike, but will nevertheless <u>grant</u> the "Defendants' Motion for Summary Judgment," as discussed below.

# I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action seeking relief for an allegedly wrongful termination pursuant to state law and 42 U.S.C. § 1983, and for tortious interference with contract.

The Plaintiff began his employment with the Gaston County Police Department (the "Department") as a law enforcement officer on January 19, 1981. In August 1999, then Chief Tom McCarthy promoted the Plaintiff to the rank of Major. A few years later, in June 2001, William J. Farley was named "interim Chief," and was promoted to permanent Chief on September 5, 2002.

The Plaintiff was also interested in becoming Gaston County's Chief of Police and, toward that end, actively sought to be employed/promoted to serve in an interim Chief position so that his performance could be compared with that of Chief Farley. The Plaintiff made it known during this period prior to Gaston County's final selection of a Police Chief that he believed [interim] Chief Farley's running of the Department "adversely affected public safety." Unpersuaded, Gaston County officials ultimately chose William J. Farley, rather than the Plaintiff, to serve as Chief of Police.

## A. Administrative Leave

Shortly after Chief Farley was chosen to serve as Chief of Police, on September 16, 2002, the Plaintiff began a period of medical leave reportedly due to digestion problems and concerns about a heart condition. Around this same time, in the light most favorable to the Plaintiff, Chief Farley began to hear "rumors" of threats of violence made by the Plaintiff toward himself and other Gaston County officers.

On September 20, 2002, Chief Farley spoke with a police psychologist, Dr. Michael Cuttler of Law Enforcement Services, Inc. ("LESI"), regarding his concerns about the Plaintiff. Following this conversation Chief Farley directed the Plaintiff to return to work on September 24, 2002.

Upon the Plaintiff's return to work, Chief Farley placed the Plaintiff on administrative leave in order to investigate his concerns regarding the threatening comments the Plaintiff had allegedly made. Specifically, Chief Farley placed the Plaintiff on leave pursuant to Gaston County Police Department Policy 22.2.2,[1] providing him with the following written explanation:

> Over the past two weeks there have been numerous officers and persons who have brought to my attention some comments and statements that you have been alleged to have made. The nature and subject matter of these statements have caused a great deal of alarm throughout the department. The investigation into these accounts is continuing.
>
> Effective September 24, 2002 you are to be placed on Administrative leave (GCPD Policy 22.2.2.). While on leave you will be paid based upon the use of your accrued sick leave.[2] The length of this leave will be dependent upon the following circumstances.
>
> > The investigation and findings regarding this alleged behavior is complete.
> >
> > You are directed to make contact with LESI and schedule an initial consultation which is to be done September 27. Should you need transportation to LESI, this department will provide you with transportation to and from Greensboro.
> >
> > You must successfully complete a fit for duty evaluation, administered by LESI at the Department[']s cost and direction. A satisfactory report and recommendation must be received by this

---

[1]Gaston County Police Department Policy 22.2.2 provides:

A. Administrative leave is a leave of absence with or without pay granted by the Chief of Police. Such leave may be granted for officers involved in shooting situations, personal problems, or any other situations deemed appropriate by the Chief of Police. The length of leave will be determined by circumstances.

B. Administrative leave must be approved in advance by the Chief of Police.

[2]However, on September 27, 2002, Chief Farley placed the Plaintiff on paid Administrative Leave for the time period of September 24, 2002 to October 24, 2002. On October 21, 2002, at the Plaintiff's request, Chief Farley extended this paid leave to run until November 7, 2002. Then, on November 6, 2002, again at the Plaintiff's request, the Administrative Leave was continued from November 7, 2002 to December 6, 2002, although this leave was specifically designated as using the Plaintiff's accrued sick leave – no longer as paid Administrative Leave.

department before you return to active status.

At the time of the mandatory administrative leave, Chief Farley's concerns stemmed from statements of other officers that the Plaintiff had made threatening comments. The Plaintiff does not dispute that he made threatening comments, but maintains that these comments were taken out of context. He explains that he was known as a "teaser" and argues, citing the deposition of fellow officer Christopher B. Lowrance, that humor in the law enforcement community is different than that in the civilian community, that is, a comment which would seem threatening to the general public might not seem threatening to someone in law enforcement. Specifically, Officer Lowrance testified in his deposition that law enforcement humor may include jokes about guns and even shooting people which might concern lay people but would be understood as more benign by law enforcement professionals.

In spite of this allegedly unique brand of law enforcement humor, it is uncontroverted that the rumors of the Plaintiff's threats caused Officer Lowrance enough concern that he began keeping a bulletproof vest at his desk.

Regarding the first condition for the Plaintiff's return to work, in the light most favorable to the Plaintiff, it appears that a thorough investigation of the alleged threats was never completed. Chief Farley was told about the rumors of the threats, and on these rumors thought it best to place the Plaintiff on administrative leave. Thus, the Plaintiff argues that he could not return to work because one of the three conditions to his return was not fulfilled by the Defendants.

The Defendants respond, however, that there was never a need to complete the investigation because the Plaintiff was not cleared for duty, even by his own therapist, prior to the exhaustion of his sick leave. In any event, absence of a completed investigation is immaterial if the Plaintiff was

lawfully dismissed prior to a determination that he was fit to return to duty.

**B.     The Plaintiff's Medical Review and "Fitness for Duty"**

The Plaintiff contends that he was fit for duty in October of 2002, although he concedes that by sometime the next month his emotional condition had deteriorated, attributing the change to "Farley's ploy to demote or terminate him without cause."

In fact, the evidence demonstrates that the Plaintiff was determined <u>not</u> to be fit for duty after his initial consultation with LESI in 2002. After meeting with the Plaintiff twice, Dr. William R. Marshall, a clinical psychologist with LESI, wrote Chief Farley on September 30, 2002,[3] detailing his impressions. Specifically, after interviewing the Plaintiff "at some length on both September 26 and September 30, 2002," Dr. Marshall wrote:

> The results of my assessment indicate that Major Phillips is currently experiencing moderate to severe symptoms of situational stress related to his reaction to changes in his work environment. In addition, his reported medical problems may be of some concern. The public statements, some of which may have been perceived as threatening in nature and which have been attributed to Major Phillips, are of significant concern. However, in my judgement, the nature and intensity of his stress symptoms and the statements he has made, when taken in context, are not of sufficient severity as to mitigate his fundamental abilities to perform his duties as a Police Officer at this time. Major Phillips acknowledges that his reaction to his work environment is problematic and that the statements he has made, although possibly taken out of context, are a source of concern.

> Major Phillips has willingly agreed to a referral to a therapist and I believe that it is reasonable to return him to duty conditionally once he is productively engaged in treatment. Consistent with our Fitness for Duty policy, we have made a referral for Major Phillips. After a satisfactory treatment plan has been filed, Major Phillips may be returned conditionally to his regular duties as soon as administratively feasible. In addition, we will monitor Major Phillips' attendance and progress in therapy and, of course, notify you immediately if any change in his status occurs and/or a re-evaluation is indicated. Once he has completed treatment, we will re-evaluate this case and hopefully return him to full duty unconditionally at that time.

---

[3]This letter is dated September 26, 2002 in error; the letter was actually drafted September 30, 2002.

Contrary to the Plaintiff's assertions, Dr. Marshall did not conclude that he was then fit for duty. Rather, he only opined that " it is reasonable to return him to duty conditionally once he is productively engaged in treatment." Toward this end, LESI referred the Plaintiff to a psychotherapist (Dr. Chuck Urrey, Ph.D.). Shortly thereafter the Plaintiff began treatment with Dr. Urrey and consented to having reports of his treatment conveyed to LESI.

Although Dr. Marshall may have anticipated a conditional return to work shortly after beginning treatment, Dr. Urrey came to a different conclusion, conveying his opinion to LESI that the Plaintiff needed more time to deal with the stress in his life prior to returning to work. Rather than continuing the prescribed treatment plan, however, the Plaintiff promptly discontinued treatment with Dr. Urrey. Dr. Marshall reported the Plaintiff's decision to terminate treatment in a November 15, 2002 letter to Chief Farley, in which he wrote, <u>inter alia</u>:

> We received communication this morning that [Major Johnny Ray Phillips] has terminated treatment with the psychotherapist to whom he was referred. Although this communication further indicated that he had entered treatment with another psychotherapist, we are unable to establish communication with this therapist as his identity is unknown to us. Consequently, we are no longer able to monitor Major Phillips' progress and as such, are no longer able to continue to assure the Department that he continues to be fit for duty.

> Should you continue to have concerns about this officer's fitness for duty, we strongly recommend that you obtain an independent assessment of this officer's fitness for duty.

Following the receipt of this letter, on December 6, 2002, Chief Farley sent the following letter to the Plaintiff:

> In a letter dated November 15, 2002 this Department received notification from William R. Marshall, Ph.D. that you have terminated treatment with the psychotherapist to whom you were referred. It is our understanding that you may have sought treatment from another provider.

7

The conditions for your return to duty remain unchanged (as stated in a letter to you dated September 24, 2002). The Department will resume administrative actions regarding this investigation when it is deemed to be most appropriate, or is found to be in the Department[']s best interest.

Until then, you will remain paid through the use of your accrued sick leave.

After this communication, the Defendants received monthly letters, seventeen in all, from the Plaintiff's private therapist, Dr. John W. Long, Ph.D., who is not associated with LESI, which were all along the lines of the text of the following July 15, 2004 letter:

This is to certify that Johnny Phillips is my patient and that he is unable to work at this time due to emotional problems. I estimate that this patient will be able to return to work on September 20, 2004.

Notably, this was the last communication received from the Plaintiff prior to the exhaustion of his accrued sick leave.

## C. The Plaintiff's Termination and Appeal

On July 28, 2004, the Plaintiff received a letter from the Gaston County Human Resources Director, Bill Hargrove, stating that he had been terminated effective July 21, 2004 because his leave balance had been exhausted.[4] On August 2, 2004, the Plaintiff wrote a letter to Chief Farley and Mr.

---

[4]The Plaintiff's termination was pursuant to the Gaston County Personnel Policy relating to unauthorized leave, which reads as follows:

Employees will be considered to be on Unauthorized Leave if they do not report to work and do not have approved Annual Leave, Sick Leave, Holiday Leave, Worker's Compensation Leave, Parental Leave, Military Leave, Civil Leave, Educational Leave With Pay, or Authorized Leave Without Pay. Unauthorized leave is grounds for discharge and is covered under Policy 11.

Policy 11 provides that the following is considered an unsatisfactory work performance:

Being absent without authorized leave, or being absent without properly notifying one's Supervisor (this may be considered a voluntary resignation resulting in immediate dismissal requiring no prior notice) . . . .

Hargrove seeking to appeal his termination. More specifically, this letter pointed out the alleged deficiencies of the procedural handling of his termination. The Plaintiff complained that, according to Gaston County policy, there should have been a pre-termination conference and that the actual termination letter should have provided more detail and should have been hand delivered. The Plaintiff argued in this letter that had policy been followed he would have been able to request an additional twelve weeks of leave under the Family and Medical Leave Act, during which he could have "resolve[d] this problem once and for all."

On September 15, 2004, Dr. Long sent a one-sentence letter "to certify that Johnny Phillips is [his] patient and that he is released to return to work Monday, September 20, 2004." This letter came after the Plaintiff exhausted over eighteen months of approved sick leave, after the Plaintiff was notified of his termination, with no LESI certification that the Plaintiff was fit for duty, and after his notification of appeal.

The appeal hearing was scheduled and began on September 17, 2004 before the Gaston County Personnel Commission, but was continued in order for the Commission to receive additional evidence prior to making a decision. However, the appeal was dismissed after the Plaintiff filed the instant action on September 22, 2004 in the Superior Court of Wake County, North Carolina.[5] On October 21, 2004, the Defendants removed the action to this Court.

On November 7, 2006, the Defendants filed the subject motion. Along with his response, the Plaintiff has also filed four Motions to Strike portions of the Defendants' supporting evidence

---

[5]Specifically, the Gaston County Personnel Commission met on January 4, 2005 to consider the County's request for dismissal of the grievance due to the instant action. By letter dated January 10, 2005, Bill Hargrove informed the Plaintiff that the appeal had been dismissed because "the Commission decided the Court was the proper forum to address [the Plaintiff's] concerns."

for their Motion for Summary Judgment, each of which will be <u>granted</u>. Accordingly, the undersigned has not considered the evidence which is the subject of the Plaintiff's motions to strike.

## II. <u>DISCUSSION OF CLAIMS</u>

### A. <u>Standard of Review</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." <u>See also Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. <u>Id</u>. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. <u>Id</u>. at 255; <u>Miltier v. Beorn</u>, 896 F.2d 848, 850 (4th Cir. 1990); <u>Cole v. Cole</u>, 633 F.2d 1083, 1089 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotations omitted).

## B. **Wrongful Termination**

_____The merits of Plaintiff's wrongful termination claim depend on whether his position was an exception to North Carolina's general "employment-at-will" rule. In support of his argument that he was <u>not</u> an at will employee, the Plaintiff points to the language of "An Act Relating to the Gaston County Police Department," enacted by the North Carolina General Assembly, Section 8, Chapter 904, Session Laws of 1983 ("the Act"), which provides:

> **Sec. 8.** All promotions within the Gaston County Police Department shall be made by the Chief of Police pursuant to policies and procedures adopted by the Board of Commissioners; provided, that promotions to any position other than that of Chief of Police shall be made by the Chief of Police after a competitive examination is administered to eligible officers.

> _____The members of the Department shall be under the control and direction of and shall be responsible to the Chief of Police for the proper conduct of the various duties of the Department. The Chief of Police may discipline, suspend or terminate any officer of the Department for any misconduct in office, or for any infraction of the rules, regulations or procedures established by the Chief of Police and approved by the Board of County Commissioners.

First, the Plaintiff's wrongful termination claim fails even if the Plaintiff was not an at will employee, which as discussed in section II(D)(3)(a) below, the Court concludes he was. The language of the Act plainly grants Chief Farley the authority to place the Plaintiff on administrative leave for <u>misconduct</u>, whether he was an at will employee or an employee with a more protected status. It is undisputed that the Plaintiff made threatening comments, which caused one witness (cited by the Plaintiff for his understanding of unique law enforcement humor) to keep a bulletproof vest behind his desk.

When an employee's conduct causes such a reaction even on the part of a sympathetic co-worker, certainly that conduct is properly characterized as "misconduct."

The decision to terminate, however, was not made immediately following the Plaintiff's threatening comments, and indeed, was not made by Chief Farley. Rather, the decision to terminate was made as a result of a second category of misconduct, namely, the Plaintiff's failure to report to work after the exhaustion of all sick leave.

As noted, the Plaintiff would likely have been cleared to return to work, albeit conditionally, if he had simply engaged in the treatment program prescribed by LESI, but chose instead to engage an independent therapist, and not to return to work beyond his accrued sick leave. Under these circumstances it was entirely reasonable for the County, according to its written policies, to terminate the Plaintiff, an employee who had shown no sign of returning to work (and, in fact, continued to send letters asserting his <u>inability</u> to return to work).

In summary, the Plaintiff's wrongful termination claim fails whether or not he was an at will employee.[6] Such a determination is immaterial when it is apparent that the Plaintiff was properly placed on leave for misconduct, and then properly terminated for failing to return to work prior to the exhaustion of his accrued leave. Rather than constituting "wrongful termination," it would be simply unreasonable to require the County to continue to hold open the Plaintiff's essentially abandoned position.

Accordingly, the Defendants' Motion for Summary Judgment must and will be <u>granted</u> as to the Plaintiff's wrongful termination claim.

**C. <u>Section 1983 Claims</u>**

In his Section 1983 claims against Gaston County, the Plaintiff makes two distinct

---

[6]The Defendants also raise the affirmative defense of sovereign immunity as to this claim. However, because the claim fails on its face, a determination of sovereign immunity is not necessary.

arguments.  First, he argues that he had a "property interest" in continued employment and was denied the due process protections of both the United States and North Carolina Constitutions when that property interest was taken.  Second, he argues that as a class of one he was denied equal protection of the law.

## 1. **Procedural Due Process**[7]

To establish a procedural due process violation, the Plaintiff must show that  (1) he had  a property interest (2) of which the Defendants deprived him (3) without due process of law.  See Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810, 826 (4th Cir. 1995).  In support of his procedural due process claim, the Plaintiff essentially argues that he was denied sufficient notice of the charges and evidence against him prior to his administrative leave and termination, and then denied any meaningful opportunity to respond to the charges or appeal his administrative leave or termination, to which he was entitled because he possessed a property right in the subject employment.

Regarding the existence and extent of a property interest in employment, the Supreme Court has instructed:

---

[7]Although the Plaintiff's Amended Complaint refers to only procedural due process violations, the Court notes that a substantive due process claim would also fail.  To make out a claim that the Defendants violated the Plaintiff's substantive due process rights, he must demonstrate:  (1) a property interest; (2) that the state deprived him of this property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.  See Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995) ("substantive due process is a far narrower concept than procedural;  it is an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them"); and Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991) (protection of substantive due process covers only state action which is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies").  As stated above, it was rational and reasonable to place an employee making threats on administrative leave and then to terminate an employee who exhausted over eighteen months of sick leave with no signs or assurances that he would ever return to his position.

> [p]roperty interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Accord Bishop v. Wood, 426 U.S. 341, 344-45 (1976), *overruled on other grounds*, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). As the Supreme Court has further explained, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577 (emphasis added).

The Plaintiff argues that the language of "An Act Relating to the Gaston County Police Department," enacted by the North Carolina General Assembly, Section 8, Chapter 904, Session Laws of 1983, and quoted above, excepts him from the general rule of at will employment, giving him the requisite property interest and entitlement to continued employment. The Plaintiff is correct in his assertion that such a statute or ordinance can create a property interest in employment. See Pittman v. Wilson County, 839 F.2d 225, 227 (4th Cir. 1988) (noting statutory exception to at will employment, but finding that language in employee handbook did not qualify as exception to general rule of at will employment in North Carolina). However, the inquiry does not stop there. As the Supreme Court has explained, in a case involving North Carolina employment:

> A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law. The North Carolina Supreme Court has held that an enforceable expectation of continued public employment in that State can exist only if the employer, by statute or contract, has actually granted some form of guarantee. . . . Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question.

Bishop, 426 U.S. at 344-45 (citing Still v. Lance, 279 N.C. 254, 182 S.E.2d 403 (1971) (school teacher did not have a property interest in continued employment, but recognizing exceptions to at will employment rule)).[8]

In Bishop, the Court examined an ordinance which, just as in this case, on its face could have been read to provide a property interest in employment. 426 U.S. at 345. However, the Court reasoned that "such a reading is not the only possible interpretation; the ordinance may also be construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures." Id. With these two potential interpretations of the ordinance, and in light of state law, the Court found no error in the district court's finding of no property interest in continued employment. Id. at 345-46. Indeed, the Supreme Court concluded by noting:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

[8]In Bishop v. Wood, 426 U.S. at 343-47, the Supreme Court reviewed an appeal from this District on a grant of summary judgment which was affirmed by a divided Fourth Circuit panel, 498 F.2d 1341 (1974).

The District Court faced a case on all fours with this one, where a city ordinance appeared to give the discharged police officer a property interest in his employment. Bishop v. Wood, 377 F. Supp. 501, 503 (1973). The District Court found that, when considered in light of North Carolina law, the ordinance did not create a property interest in employment. Id. at 504-05.

This Court also notes that the portion of the Supreme Court's Bishop opinion which defers to a federal court's interpretation of the state law where it sits has effectively been overruled by Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). However, this fact does not change the requirement that this Court give weight to precedent interpreting similar laws.

Id. at 349-50.

The facts in this case mandate the same conclusion. North Carolina has a "manifest commitment to the doctrine of employment at will." Guy v. Travenol Laboratories, Inc., 812 F.2d 911, 912 (4th Cir. 1987). As the Fourth Circuit has concluded:

> the North Carolina Supreme Court has continuously accorded employers broad freedom in employment decisions. . . . [T]he at will doctrine commands long and continued support in the North Carolina courts even in what may appear unusual and extenuating circumstances. . . . [T]he freedom of employers to dismiss employees perceived as unreliable and incompetent should not be lightly circumscribed.

Id. at 913. Given this clearly established North Carolina law, and the general hesitance of federal courts to superimpose a contrary construction,[9] the Court concludes that this provision of law is likewise capable of being interpreted in two ways – one which affords a property interest in employment and one which merely lists reasons for which Chief Farley could dismiss the Plaintiff. Under the totality of the circumstances and applicable law, this provision must therefore be read to list reasons, among others, for which Chief Farley may dismiss an employee, not as one creating a property interest in employment.

To review the relevant language, the policy reads as follows: " The Chief of Police may

---

[9]Recognizing that unpublished authority is of limited precedential value, the undersigned notes that a more recent opinion from the Western District of North Carolina has faced the same issue of whether the language of a similar ordinance created a property interest in employment. See Shuler v. Town of Waynesville, 1999 WL 33315654 (W.D.N.C. 1999). The Shuler court held:

> based on a continuum of North Carolina decisions protect[ing] the presumption of employment at will[,] that a North Carolina court would also find that the personnel manual adopted by the Town of Waynesville would not be considered to be a grant[] of a property interest in continued public employment. While this is a harsh result, the opposite conclusion would be equally harsh: the micro-management of routine town affairs by federal courts where no federal rights are at stake.

Id. at *3. The ordinance at issue in this case read "[a]n employee may be suspended or dismissed for causes relating to personal conduct detrimental to services with the Town . . . Inappropriate personal conduct such as . . . any other behavior a reasonable person would deem behavior unbefitting the Town are examples of . . . reasons for immediate suspension or dismissal." Id. at *1.

discipline, suspend or terminate any officer of the Department for any misconduct in office, or for any infraction of the rules, regulations or procedures established by the Chief of Police and approved by the Board of County Commissioners."[10] In order for this language to change the strong preference for at will employment in North Carolina, the provision should be clear that these are the only reasons for which an officer of the Department may be terminated. However, the provision includes no such express restriction – it states simply that the Chief "may" terminate an employee for these reasons. Indeed this conclusion is reinforced by the fact that it was the Gaston County Human Resources Director, not Chief Farley, who ultimately terminated the Plaintiff's employment.

In summary, because the Plaintiff did not have a property interest in his employment, the Defendants' Motion for Summary Judgment will also be <u>granted</u> with respect to his due process claims.

### 2. <u>Class of One</u>

Here, the Plaintiff argues that he was discriminated against as a class of one (not as a member of a protected class). More specifically, he states that the "Defendants' acts towards Plaintiff . . . were irrational and arbitrary; motivated by ill will resulting from Plaintiff's actions not involving or

---

[10]Compare the language of this policy to that of North Carolina General Statute § 126-35(a) which states "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause. . . ." This language has been held to create a property interest in employment within the meaning of the Due Process Clause. <u>Howell v. Town of Carolina Beach</u>, 106 N.C. App. 410, 417, 417 S.E.2d 277, 281 (1992). However, this statute explicitly removes a class of employees from the general rule of at will employment. The provision at issue here lacks such explicitness and leaves the possibility of other reasons for dismissal open, and only refers to removal by the Chief of Police.

The <u>Howell</u> case, cited above, is interesting as well, and essentially finds a due process violation based upon a town's failure to follow the grievance process allowed an employee in its Manual (which had been adopted as an ordinance). <u>Id.</u> at 417-18, 417 S.E.2d at 281-82. Interestingly, the <u>Howell</u> court does not find a property interest on any provision requiring "cause" for termination, but rather it bases the property interest on the provisions requiring specific grievance procedures. <u>Id.</u> While this is a different approach, it is nonetheless inapplicable here as the Plaintiff has not put forth allegations to support such a claim.

related to his job performance; and were based on an intentional or reckless disregard for Plaintiff's rights by singling out Plaintiff for adverse treatment."

The Supreme Court has recognized "equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). <u>See also</u> <u>Willis v. Town of Marshall</u>, 426 F.3d 251, 263 (4th Cir. 2005) (recognizing "class of one" equal protection claim). However, the Plaintiff's claim in this case cannot prevail because there <u>was</u> a rational basis for placing him on administrative leave and for his subsequent termination. As previously stated, placing the Plaintiff on administrative leave was rationally based on his bizarre statements, and his termination was rationally based on the Plaintiff's failure to return to work after exhausting all available sick leave. Accordingly, the Plaintiff's "class of one" claim must likewise fail.

In regard to the Plaintiff's North Carolina Constitution claims, North Carolina courts have consistently interpreted the state "due process" and "equal protection" provisions as synonymous with their counterparts under the Fourteenth Amendment. <u>See, e.g.</u>, <u>Simeon v. Hardin</u>, 339 N.C. 358, 377, 451 S.E.2d 858, 871 (1994); <u>Bulova Watch Co. v. Brand Distributors</u>, 285 N.C. 467, 474, 206 S.E.2d 141, 146 (1974); <u>and</u> <u>State v. Barnes</u>, 264 N.C. 517, 520, 142 S.E.2d 344, 346 (1965).

Consequently, the Defendants' Motion for Summary Judgment will be <u>granted</u> on the Plaintiff's federal and state constitutional claims for denial of due process.

### D. <u>Corum Claim</u>

In this claim, the Plaintiff bases his argument on <u>Corum v. University of North Carolina</u>, 330

N.C. 761, 413 S.E.2d 276 (1992). In Corum, the North Carolina Supreme Court recognized that "in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against [a State governmental entity] under [North Carolina's] Constitution." Id. at 782, 413 S.E.2d at 289. However, this claim also necessarily fails because, as discussed above, no state constitutional rights have been abridged. For this reason, the Defendants' Motion for Summary Judgment on the Plaintiff's Corum claim must and will also be granted.

### E.  Tortious Interference with Contract

Finally, in this claim made against Chief Farley in his individual capacity, the Plaintiff alleges that Chief Farley interfered with his employment contract with Gaston County and wrongfully induced both the County and the Department to place him on administrative leave and then terminate his employment.

In North Carolina, the elements of a tortious interference with contract claim are:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

Bloch v. Paul Revere Life Ins. Co., 143 N.C. App. 228, 239, 547 S.E.2d 51, 59 (2001). The Court need not even examine the other elements to this claim because it plainly fails based on the fourth element – which would require a finding that Chief Farley acted without justification. Much to the contrary, as repeatedly stated above, Chief Farley acted with rational and reasonable justification in placing the Plaintiff on administrative leave.

Nor does the evidence support the conclusion that Chief Farley caused the County to

terminate the Plaintiff's employment. But, even if he did, for the reasons set forth above, the Plaintiff's termination was equally justified. Accordingly, the Defendants' Motion for Summary Judgment on the Plaintiff's tortious interference with contract claim will also be <u>granted</u>.

### III. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The Plaintiff's "Motion to Strike Expert Report and Testimony of Ronald E. Hansen" (document #37) is **GRANTED**.

2. The Plaintiff's "Motion to Strike Hearsay Statements of J. F. Holloway" (document #39) is **GRANTED**.

3. The "Plaintiff's Motion to Strike Hearsay Statements of Sharon Ewing" (document #40) is **GRANTED**.

4. The Plaintiff's "Motion to Strike Portions of Affidavit of Interim Assistant County Manager Phil Ponder" (document #42) is **GRANTED**.

5. The "Defendants' Motion for Summary Judgment" (document #29) is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE**.

6.  The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED, AND DECREED.**

Signed: March 26, 2007

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge